UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Matthew Urspringer,

    Plaintiff,

v.

Pizza Lucé, Inc. d/b/a Pizza Lucé,
and Pizza Lucé VII, Inc. d/b/a Pizza Lucé,

    Defendants.

**COMPLAINT**
**(Jury Trial Demanded)**

Court File No. _____

---

Plaintiff Matthew Urspringer ("Plaintiff"), by his attorneys Nichols Kaster, PLLP, brings this action for damages and other legal and equitable relief, stating the following as his claims against Defendant Pizza Lucé, Inc. d/b/a Pizza Lucé, and Pizza Lucé VII, Inc. d/b/a Pizza Lucé (collectively, "Defendants" or "Pizza Lucé").

## THE PARTIES

1. Plaintiff Matthew Urspringer ("Urspringer" or "Plaintiff") is an individual who resides in the City of Wayzata, County of Hennepin, State of Minnesota.

2. Defendant Pizza Lucé, Inc. d/b/a Pizza Lucé is a Minnesota domestic corporation with a registered office address of 119 North 4th Street, City of Minneapolis, County of Hennepin, State of Minnesota.

3. Defendant Pizza Lucé VII, Inc. d/b/a/ Pizza Lucé is a Minnesota domestic corporation with a registered office address of 119 North 4th Street, #210, City of Minneapolis, County of Hennepin, State of Minnesota.

4. During all relevant times herein, Defendants operated a principal executive office at 401 2nd Avenue North, Suite 210, City of Minneapolis, County of Hennepin, State of Minnesota.

5. During all relevant times herein, Plaintiff was an "employee" of Defendants within the meaning of 42 U.S.C. § 12111(4) and Minn. Stat. § 363A.03(15) and Defendants were his "employer" within the meaning of 42 U.S.C. § 12111(5) and Minn. Stat. § 363A.03 (16).

## JURISDICTION AND VENUE

6. This action arises under the Americans with Disabilities Act, 42 U.S.C §§ 12101, et seq., as amended ("ADA"). As such, jurisdiction is proper under 28 U.S.C. § 1331.

7. Plaintiff brings additional claims under the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01, et seq. ("MHRA"). Supplemental jurisdiction is proper for such claims under 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the District of Minnesota.

## FACTUAL ALLEGATIONS

*Plaintiff's Employment with Defendants*

9. Plaintiff Matthew Urspringer was hired by Defendants in the Spring of 2009 as General Manager for the company's new location in Hopkins.

10. Upon information and belief, at all relevant times, Defendants acted as a single employer or joint employers and had substantial control over significant aspects of his employment.

11. Plaintiff led the new store opening in Hopkins and in doing so, was responsible for hiring roughly 120 staff.

12. Plaintiff also created a training program for new hires.

13. Plaintiff's performance was consistently strong throughout his tenure at the Hopkins location.

14. In or about May 2012, the CEO of Pizza Lucé, Julie "JJ" Haywood and another member of the corporate office, Laura Hanson, asked if Plaintiff was interested in opening a new location in Richfield, Minnesota.

15. Plaintiff accepted Defendants' offer to open a new location in Richfield, and led yet a second successful new store opening.

16. Sales remained strong at the Hopkins and Richfield locations, and in fact, both locations consistently had the strongest in-store sales out of all of the Pizza Lucé locations in Minnesota.

*Plaintiff Obtains Treatment for Alcoholism after Serious Motorcycle Accident*

17. In May 2013, Plaintiff was in a serious motorcycle accident and suffered a Traumatic Brain injury and coma.

18. Shortly after the accident, Plaintiff entered an outpatient treatment program for alcoholism.

19. Plaintiff also advised Ms. Haywood and Area Manager, Dennis Janowski, that he was a recovering alcoholic, and that he was attending treatment.

20. Plaintiff graduated from his outpatient treatment program on or about October 1, 2013.

21. In October 2013, the corporate office and other general managers of Pizza Lucé attended a "Pizza Tour", which entailed visiting local competitors during happy hour to assess the competitive landscape.

22. Because the "Pizza Tour" involved drinking, Plaintiff chose not to attend the initial tours given his battle with alcoholism. Plaintiff did, however, attend the last tour, which was October 22, 2013.

23. Following dinner with the team on October 22, 2013, Plaintiff experienced a great deal of anxiety and ultimately had a relapse with alcohol.

24. Plaintiff called Mr. Janowski on the evening of October 22, 2013, and notified him that he had relapsed and was in the hospital.

***Defendants Reprimand Defendant Following Relapse with Alcohol***

25. Upon Plaintiff's return to work, he was reprimanded and written up by Ms. Haywood allegedly because of his performance.

26. Approximately a month later, he received the worst annual evaluation he had ever received during his tenure with the company.

27. In a meeting to discuss his evaluation with Mr. Janowski, Plaintiff told him it was very clear that they were intentionally trying to make his performance look negative and asked him to please be honest with him.

28. Despite Plaintiff's request, Mr. Janowski proceeded to give Plaintiff new goals to work on.

29. While Plaintiff did not agree with Mr. Janowski's assessment of his performance, he continued to work hard as he always had done.

30. Approximately two weeks after this evaluation, Mr. Janowski told Plaintiff he was doing a great job.

***Defendants Terminate Plaintiff Within Days of Notification that Plaintiff was Hospitalized Due to Relapse with Alcohol***

31. Plaintiff continued to work hard and remained dedicated to the success of his store.

32. On or about Thursday, April 3, 2014, however, Plaintiff ultimately suffered another relapse.

33. Plaintiff's father called to let his employer know he was hospitalized. Plaintiff also called Mr. Janowski the next day to confirm he suffered a relapse and planned to go to treatment again.

34. Plaintiff told Mr. Janowski that he would be at work as scheduled, to which Mr. Janowski said something to the effect of, "Don't worry about going into work tonight or Saturday."

35. Plaintiff reiterated that he was fine and perfectly capable to work but he again told the Plaintiff his shifts were covered. During this phone call, Mr. Janowski told Plaintiff that he and Ms. Haywood wanted to meet with him on Monday.

36. On Sunday, April 5, 2014, Plaintiff went into work on his day off (as he did on occasion) to prepare for work on Monday.

37. The very next day, Ms. Haywood and Mr. Janowski fired him. Defendants told Plaintiff that he was fired, in part, for coming into work on Sunday despite the fact that he was never told he wasn't permitted to come in.

38. Defendants also told Plaintiff that he failed to properly conduct a past investigation regarding a verbal altercation between two of his employees, despite the fact that he conducted the investigation as instructed by Jackie Engell at the Corporate Office.

39. Notably, approximately two weeks before Plaintiff's termination, Mr. Janowski told Plaintiff he was one of the best operators he had ever seen.

40. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on or about May 21, 2014, alleging discrimination on the basis of disability in violation of the ADA and the MHRA.

41. On or about September 11, 2014, the EEOC issued a Right to Sue to Plaintiff.

## CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. §§ 12101, et seq.
### (DISABILITY DISCRIMINATION)

42.  Plaintiff incorporates the foregoing paragraphs of his Complaint by reference.

43.  Plaintiff is a qualified individual with a disability, as defined by the ADA, 42 U.S.C. § 12102 and 42 U.S.C. § 12111(8).

44.  The ADA provides that it is an unlawful employment practice to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

45.  The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (30))." 42 U.S.C. § 12102(1).

46.  The ADA mandates the definition of disability to "be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

47. Major life activities include, but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

48. Plaintiff suffers from an impairment that substantially limits one or more major life activities.

49. Defendants' conduct identified herein violated 42 U.S.C. §§ 12112(a)

50. As a result of Defendants' conduct in direct violation of the ADA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress and other damages in an amount in excess of $75,000.00. Plaintiff is also entitled to attorneys' fees and costs incurred in connection with this claim.

51. Defendants committed the above-alleged facts with malice or reckless indifference to the federally protected rights of Plaintiff. As a result, Plaintiff is entitled to punitive damages.

## COUNT II

### VIOLATIONS OF THE MINNESOTA HUMAN RIGHTS ACT
### Minn. Stat. §§ 363A.01, et seq.
### (DISABILITY DISCRIMINATION)

52. Plaintiff incorporates the foregoing paragraphs of his Complaint by reference.

53. Plaintiff is an individual with a disability, as defined by the MHRA, Minn. Stat. § 363A.03, subd. 12.

54. Minn. Stat. § 363A.08, subd. 2 of the MHRA provides that it is an unlawful employment practice for an employer to discharge or discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's disability.

55. A disability under Minn. Stat. § 363A.03, subd. 12 is "any condition or characteristic that renders a person a disabled person. A disabled person is any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment."

56. Plaintiff suffers from an impairment that substantially and materially limits one or more major life activities.

57. Defendants' conduct detailed herein violated Minn. Stat. § 363A.08.

58. As a result of Defendants' conduct in direct violation of the MHRA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress and other damages in an amount in excess of $75,000.00. Plaintiff is also entitled to attorneys' fees and costs incurred in connection with this claim.

59. Defendants committed the above-alleged facts with malice, reckless disregard or deliberate disregard for the rights and safety of Plaintiff. As a result, Plaintiff is entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Matthew Urspringer prays for judgment against Defendants as follows:

A. For an award of compensatory relief and damages arising from past and future loss of income, benefits, emotional distress and other damages in excess of $75,000;

B. For injunctive relief prohibiting Defendants and their directors, officers, owners, agents, successors, employees and representatives, from engaging in the unlawful practices set forth herein. Such relief at a minimum should include an order directing Defendants to cease all discrimination, and implement a training program for all supervisory and corporate personnel instructing them on prohibited discrimination practices;

C. For Plaintiff's costs, disbursements and attorneys' fees pursuant to law;

D. For all relief available under the ADA, 42 U.S.C. §§ 12101, as amended, et seq., including punitive damages;

E. For all relief available under the MHRA, Minn. Stat. §§ 363A.01, et seq., including treble damages, punitive damages and a civil penalty against Defendants;

F. For such other and further relief available by statute; and

G. For such other and further relief as the Court deems just and equitable.

Dated: October 27, 2014          **NICHOLS KASTER, PLLP**

/s/ Kate A. Fisher
Matthew H. Morgan (#0304657)
morgan@nka.com
Kate A. Fisher (#0392180)
kfisher@nka.com
80 South Eighth Street
4600 IDS Center
Minneapolis, MN 55402-2242
Telephone: (612) 256-3200

**ATTORNEYS FOR PLAINTIFF**

10